IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW GUERRA-SHANER,<br><br>                Petitioner,<br><br>     vs.<br><br>TOM FELKER, Warden, High Desert State Prison,<br><br>                Respondent. | No. 2:09-cv-02822-JKS<br><br>MEMORANDUM DECISION |

      Matthew Guerra-Shaner, as state prisoner appearing *pro se*, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Guerra-Shaner is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the High Desert State Prison. Respondent has answered, and Guerra-Shaner has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

      In September 2002 following his conviction of Robbery in the Second Degree, Cal. Penal Code § 211, with the use of a firearm enhancement, Cal. Penal Code § 12022.5(a)(1), Guerra-Shaner was sentenced to an aggregate prison term of fourteen years. Guerra-Shaner does not challenge his conviction or sentence in this proceeding.

      Guerra-Shaner was charged in a Rules Violation Report ("RVR") with attempted murder in violation of prison regulations.[1] In October 2006 following a prison disciplinary hearing before a Senior Hearing Officer ("SHO"), Guerra-Shaner was found guilty and assessed a 360-

---

[1] Cal. Code Regs., tit. 15, § 3005(c).

day forfeiture of good-time credit.  Upon completion of the administrative appeals process,[2] Guerra-Shaner timely filed a petition for habeas relief in the Lassen County Superior Court, which denied his petition in an unreported, reasoned decision.  The California Supreme Court summarily denied Guerra-Shaner's habeas petition without opinion or citation to authority in an unreported decision on May 20, 2009.  Guerra-Shaner timely filed his Petition for relief in this Court on October 6, 2009.

The facts underlying Guerra-Shaner's conviction as found by the SHO in the RVR:

**Findings:** Inmate Guerra-Shaner is being found GUILTY of Attempted Murder, a Division A-1 Offense.  This finding is based on the preponderance of evidence which consists of:

1. The written report authored by Correctional Sergeant J. Smith, which documents that on September 6, 2006, an investigation into an attempted homicide was completed.  This investigation revealed that Inmate Guerra-Shaner was involved in the attempted murder of Inmates Firmin, P-347:35, and Page, F-1 DODO, that occurred in Building Six on August 3, 2006.
2. This investigation revealed Inmate Guerra-Shaner acted in concert with Inmate King, J-69287, in the attack on Inmate Page.
3. Inmate Guerra-Shaner's role in this incident was to approach Inmate Page and attack him using an inmate manufactured slashing weapon to slash Inmate Page's neck.
4. The Disciplinary referred to the CDR-837 Crime-Incident Package, Log # CCC-LAS-06-08-0200, and the Confidential Memorandum dated 9-6-06, authored by Correctional Sergeant J. Smith.  This SHO explained to Inmate Guerra-Shaner the correct terminology should have been to refer him to the Confidential Disclosure Form, CDC-1030.  Inmate Herra-Shaner stated he understood the correction.
5. The CDCR 837 Crime-Incident Package completed on this incident was reviewed, which revealed:
    • On August 6, 2006, at approximately 2255 hours, a slashing assault took place in Lassen Unit, Building Six.  This double

---

[2] Prisoner disciplinary actions are subject to internal administrative review at the institutional and departmental levels.  Cal. Code Regs., tit. 15, §§ 3084.1, 3084.2, 3084.7, 3084.9.

>>assault resulted in the slashing to two White inmates. These two inmates received slash-type injuries to their necks.
> - The CDCR 837B1 listed Inmate Page, F.10000, as having a slash wound to the right side of his neck, which required seven sutures to close the wound. The amended COCR 837B1 listed Inmate Guerra-Shaner as a suspect.
> - The CDCR 837 C reports documenting the incident were reviewed. Correctional Officer T. Beard, assigned to the Building Six Observation that night, reported he observed a fight near bed #127, and observed three white inmates run to the bed area near bed #108 when he activated his personal alarm device.
> - The Plot map completed during this incident was reviewed. Inmate Guerra-Shaner was listed as being in the bed area of #107.
>
> 6. The CDCR Confidential Disclosure Form 1030 was reviewed. A copy of this document was provided to Inmate Guerra-Shaner on 9-15-06, which provided Inmate Guerra-Shaner sufficient time to prepare a defense. This disclosure statement provided as much information as possible without endangering institutional security or the source, as identification of the source could place his safety in jeopardy if disclosed. This SHO has reviewed the confidential information and the CDC 1030 Confidential Disclosure Form and is satisfied that the degree of reliability of the source meets the established criteria of CCR Title 15, Section 3321. The Confidential Memorandum was reviewed, which was authored by Correctional Sergeant J.. Smith, dated September 6, 2006. The source provided first hand information identifying. Inmate Guerra-Shaner as using a razor blade to slash Inmate Page's neck. The source also identified Inmate Guerra-Shaner by identifying tattoos as well as identifying Inmate Guerra-Shaner as "Buzzard". With the first hand information provided, and the fact that some of the information provided has proven to be true, this SHO accepts the information contained in the Confidential Memorandum.
> 7. The Investigative Employee report was reviewed. Inmate Guerra-Shaner asked one question of Witness #1, Inmate Page. After review of the I.E. report, this SHO finds no pertinent information in the document.

After review of the disciplinary report, and supplemental information, this SHO finds ample evidence that Inmate Guerra-Shaner was involved in the attempted murder of Inmate Page, F-10000. This finding is based on the facts provided in the disciplinary, the CDCR Crime Incident Package, and the Confidential Memorandum. This SHO feels the charge is appropriate as attempted murder, for the following reasons:

3

- The attack was pre-arranged, was in concert with other attackers, and involved two victims, both housed in bed area 127.
- Inmate Page suffered a slashing type wound to his neck. A reasonable person, given the same type situation, would believe this type of an injury was meant to kill.
- The weapon used by Inmate Guerra-Shaner was a razor blade. A razor blade, used in a slashing type manner, is a deadly weapon. A deadly weapon is defined as anything organic that if used as a weapon could cause serious harm or death. Again, a reasonable person given the same type of information would feel this razor blade was used as a deadly weapon. It is simply luck that the would caused by the razor was not quite deep enough to kill inmate Page. This SHO does believe the intent of Inmate Guerra-Shaner was to kill Inmate Page.

Therefore a finding of guilt for the specific charge, Attempted Murder, is appropriate.[3]

## II.  GROUNDS RAISED/DEFENSES

In his Petition Guerra-Shaner raises a single ground: that the evidence is insufficient to support his conviction. Respondent asserts no affirmative defense.[4] Guerra-Shaner also requests that this Court hold an evidentiary hearing.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5] The Supreme Court has explained that "clearly established Federal law" in

---

[3] Docket No. 12-1 at 6-8.

[4] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[9] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[10] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial

---

[6] *Williams*, 529 U.S. at 412 (alteration added).

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

5

impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[14]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[15]  State appellate court decisions that summarily affirm a lower court's opinion without

---

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[14] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[15] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

explanation are presumed to have adopted the reasoning of the lower court.[16] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[17]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal. If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[18] This is considered as the functional equivalent of the appeal process.[19]

## IV.  DISCUSSION

**A.   Evidentiary Hearing**

Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[20] In this case, Guerra-Shaner did not request an

---

[16] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[17] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[18] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[19] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[20] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

evidentiary hearing in the state courts. Thus, it cannot be said on the record that the state courts precluded him from developing the factual basis for his claim.[21] It does not appear from the record that the California courts made any independent evidentiary findings, and review in this case is based upon the findings of the SHO, who did hold a hearing developing the facts. Guerra-Shaner has not identified any factual conflict to resolve that would require this Court to hold an evidentiary hearing. The request for an evidentiary hearing is, therefore, DENIED.

**B.     Merits**

Guerra-Shaner's contention that the evidence did not support the finding of guilt is based on the following three claims: (1) the SHO ignored the statement made by the alleged victim, Inmate Page, to the assigned Investigating Employee denying that Guerra-Shaner assaulted him;[22] (2) the information provided by the confidential informant was unreliable; and (3) the correctional officers all testified that they did not observe the assault on Inmate Page. The Deputy Warden in the institutional level review rejected Guerra-Shaner's arguments, holding:

> You were found guilty based upon a preponderance of evidence. Confidential information has been provided that clearly implicates you in this incident. Your C-File does not note that your alias is "Buzzard" as noted in your RVR. It has been documented that your alias is "Blizzard". This has been deemed a misinterpretation

---

[21] *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

[22] The record reflects that the Investigative Employee Report contained the following:

**INMATE WITNESSES # 1**  Inmate GUERRA, SHANER requested Inmate
Page F-10000, L4-245, as a Witness.
Q) Did Inmate SHANER in any way assault?
A) No! neither did Inmate KING!

Docket No. 12-3 at 30.

of your alias by the confidential informant. Conclusive identifying information was provided by the informant in relation to your tattoos and physical description. The confidential memorandum, dated September 9, 2006 and authored by Sgt. J. Smith, notes that you were identified by "highly distinctive tattoos, including the spider web tattoos" inside your ears. The fact that your C-File does not contain updated information pertaining to your tattoos is irrelevant. The identifying tattoo information provided was compared to photographs taken as part of the CDCR 837 Incident Package.

Regarding your belief that the R.E. cannot author a CDCR 1030 Confidential Disclosure Form in relation to this RVR, your assertion is unfounded. CCR 3321 does not preclude the R.E. from perfomting this duty.

Your claim that the reliability of the confidential informant was not established on the CDCR 1030 Confidential Disclosure Form is again unfounded. The CDCR 1030 dated September 15, 2006 clearly notes that the informants' reliability was based upon the fact that "Part of the information provided by the source(s) has already proven to be true." On your RVR, in the "Findings Section," the SHO clearly reiterates the reliability of the informant.[23]

The Lassen County Superior Court also rejected Guerra-Shaner's arguments, holding:

Petitioner, an inmate at the California Correctional Institution. challenges a finding of guilt in disciplinary proceedings had at the California Correctional Center on October 7, 2006, alleging such finding to be founded on insufficient evidence. and the resulting credit loss to be a deprivation of liberty in violation of his right to clue process. The petition fails to establish sufficient grouds [*sic*] or circumstances to merit relief in habeas corpus (*People* v. *Duvall* (1995) 19 Cal.4th 464, 474-475). The petitioner attacks the credibility of the confidential information against him (identity) by alleging that the information was partially erroneous in that the informant initially misstated petitioner's name and citing a statement by the victim that he, petitioner, was not his victim's assailant (ignoring the fact that petitioner was identified by his nickname. "Buzzard," and the spider tattoo in his ear.) These allegations do not support a conclusion that the administrative finding of guilt was totally without support in the evidence. The court will not examine the whole record. independently assess the credibility of witnesses or weigh the evidence. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. (See *Superintendent v. Hill* (1985) 472 U.S. 445, 455-456).[24]

---

[23] Docket No. 12-3 at 33.

[24] Docket No. 12-3 at 2-3.

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of rights due to a defendant in such a proceeding does not apply.[25] In the context of prison disciplinary proceedings, the minimum requirements of due process are: (1) advance written notice of the charges brought against the inmate; (2) the right to call witnesses and present documentary evidence in his defense; (3) a written statement of the factfinder of the evidence relied on and the reasons for the disciplinary action taken,[26] and (4) the findings must be supported by some evidence in the record.[27]

Reduced to its basic premise, Guerra-Shaner's argument is that the necessary elements of the offense, as determined under California law, were not proven by the preponderance of the evidence. The fatal flaw in Guerra-Shaner's argument is that preponderance of the evidence is not the applicable standard. The applicable standard by which federal habeas courts are bound in reviewing state prisoner disciplinary findings is whether "there is *any* evidence in the record that could support the conclusion reached by the disciplinary board."[28] Neither the state courts nor this Court are permitted to independently assess the credibility of the witnesses or re-weigh the evidence. In this case, although it was not articulated, the inference to be drawn from the SHO's decision is that he found the confidential informant to be credible and the statement made by Inmate Page not to be credible. Applying the some evidence standard, this Court cannot find that the decision of the Lassen County Superior Court was either contrary to or an unreasonable

---

[25] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[26] *Id.* at 563-66.

[27] *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

[28] *Id.* at 455-56 (emphasis added).

application of *Hill*, or an unreasonable determination of the facts in light of the evidence presented to that court.[29]

## V.  CONCLUSION AND ORDER

Guerra-Shaner is not entitled to relief.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[30]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[31]

The Clerk of the Court is to enter judgment accordingly.

Dated: February 9, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[29] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[30] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[31] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.